# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# COURT FILE NO.: _____

| | |
|---|---|
| Jeffrey A. Beaubien,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Equifax Information Services LLC,<br>Experian Information Solutions, Inc., and<br>TransUnion LLC,<br><br>　　　　　　Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises out of events emanating from this District, venue is proper in this Court, and this Court has jurisdiction pursuant to 15 U.S.C. § 1681 *et seq.* and 28 U.S.C §§ 1331.

## PARTIES

2. Plaintiff Jeffrey A. Beaubien (hereinafter "Plaintiff") is a natural person who resides in the City of Eden Prairie, County of Hennepin, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. Defendant Equifax Information Services, LLC (hereinafter "Defendant Equifax") is a foreign corporation doing business from the corporate address of 1550 Peachtree Street NW, Atlanta, GA. Defendant Equifax is a "consumer credit reporting agency" as defined by 15 U.S.C. § 1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the

1

purpose of furnishing "consumer reports," as defined in § 1681a(d) of the Act, to third parties.

4. Defendant Experian Information Solutions, Inc. (hereinafter "Defendant Experian") is incorporated under the laws of Texas, with a principal place of business at 601 Experian Parkway, Allen, TX 75013-3701. Defendant Experian is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in § 1681a(d) of the Act, to third parties.

5. Defendant TransUnion LLC (hereinafter "Defendant TU") is a foreign corporation incorporated under the laws of Delaware and is authorized to do business in the State of Minnesota. It has its principal place of business at 555 West Adams Street, Chicago, Illinois, 60661. Defendant TU is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f) of the Act, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in § 1681a(d) of the Act, to third parties.

## FACTUAL ALLEGATIONS

6. Plaintiff has a son named Joseph A. Cairl (hereinafter "Cairl").

7. On or around June 25, 2003, Cairl applied for a private student loan from Bremer Bank ("Bremer"). Bremer approved the application and lent $10,000 to Cairl. Plaintiff did not co-sign this loan.

8. On or around July 1, 2004, Cairl applied for a second loan from Bremer. Bremer approved the application and lent $10,871 to Cairl. Plaintiff did not co-sign this loan.

9. On or around March 20, 2005, Cairl applied for a third loan from Bremer. Bremer approved the application and lent $3,723 to Cairl. Plaintiff did not co-sign this loan.

10. On or around July 28, 2005, Cairl applied for a fourth loan from Bremer. Bremer approved the application and lent $13,000 to Cairl. Plaintiff did not co-sign this loan.

11. On or around October 18, 2005, Cairl applied for a fifth loan from Bremer. Bremer approved the application and lent $1,794 to Cairl. Plaintiff did not co-sign this loan.

12. On or around August 21, 2006, Cairl applied for a sixth loan from Bremer. Bremer approved the application and lent $15,784 to Cairl. Plaintiff did not co-sign this loan.

13. On or around November 14, 2006, Cairl applied for a seventh loan from Bremer. Bremer approved the application and lent $3,200 to Cairl. Plaintiff did not co-sign this loan.

14. On or around January 30, 2007, Cairl applied for an eighth loan from Bremer. Bremer approved the application and lent $1,240 to Cairl. Plaintiff co-signed this loan.

15. On or around June 18, 2007, Cairl applied for a ninth loan from Bremer. Bremer approved the application and lent $5,652 to Cairl. Plaintiff co-signed this loan.

16. On or around August 16, 2007, Cairl applied for a tenth loan from Bremer. Bremer approved the application and lent $16,094 to Cairl. Plaintiff co-signed this loan.

17. On or around October 2, 2007, Cairl applied for an eleventh loan from Bremer. Bremer approved the application and lent $6,302 to Cairl. Plaintiff co-signed this loan.

18. The principal balance of all eleven loans totaled $87,660. The principal balance of the four loans co-signed by Plaintiff totaled $29,228.

19. Thereafter, Xerox Education Services, Inc. ("Xerox") acquired servicing rights to all eleven private student loans from Bremer to Cairl described in paragraphs seven through seventeen of this Complaint.

20. Thereafter, Xerox assigned all eleven loans in a single account number of 470-064XXXX.

21. Thereafter, Xerox began reporting to Defendants Equifax, Experian, and TU that Plaintiff had an account balance equal to the total balance of all eleven loans plus accrued interest, over $100,000.

22. On January 6, 2012, Plaintiff ordered copies of his consumer reports from the national CRAs—Defendants Equifax, Experian, and TU.

23. The January 6, 2012 consumer reports confirmed the worst: Xerox had reported to Defendants TU, Experian, and Equifax that Plaintiff owed $106,584 on account number 470-064XXXX

24. On January 12, 2012, Plaintiff sent the following dispute to all three Defendants:

*I have recently looked at my credit report and there is a glaring mistake. ACS/ Student Loan Finance - account number 470-064XXXX is reporting me as having a balance of $106,584. This balance as it is reporting on me is false.*

*The ACS account is a consolidation of 11 separate student loans that my son Joe Cairl took out starting in 2003. The total of all loans is the $106,584 balance. However, I only signed for a fraction of the debt as you can see by the copies of the loans I have enclosed. By my addition I am only responsible for approximately $30,000 of the student loan balance.*

*This is having a hurting my debt to income ratio.*

*Please fix my report and send me a corrected copy as soon as possible.*

25. Plaintiff attached copies of all eleven promissory notes to this dispute letter. The promissory notes prove that Plaintiff only co-signed for four of the eleven loans and that the principal balance of all loans co-signed by Plaintiff totals $29,288.

26. Defendant TU received Plaintiff's dispute on January 17, 2012 and forwarded an Automated Consumer Dispute Verification (ACDV) to Xerox on January 20, 2012. Defendant TU's notice and communication via the ACDV to Xerox failed to include the relevant copies of Plaintiff's individually disputed loans that were provided by Plaintiff to TU in his dispute letter.

27. Under 15 U.S.C. § 1681i(a)(2)(A), a credit reporting agency shall provide notice to the provider of the information disputed, including "all relevant information regarding the dispute that the agency has received from the consumer." Further, under 15 U.S.C. § 1681i(a)(2)(B), a "consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the

consumer." Defendant TU's failure to include the relevant copies of Plaintiff's individually disputed loans in its notice and communication to Xerox was in violation of 15 U.S.C. §§ 1681i(a)(2)(A) and 1681i(a)(2)(B) .

28. The ADCV sent by Defendant TU to Xerox classified Plaintiff's dispute as "Not liable for Acct (I.e. Ex-spouse, Business). If liable, Provide Complete ID and ECOA Code. Disputes current Balance – Verify Original Loan Amount, Scheduled Monthly Payment, Actual Payment Amount, Amount Past Due, Current Balance, and Original Charge-off Amount."

29. Defendant TU's ADCV failed to accurately and clearly convey Plaintiff's dispute to Xerox, specifically that he disputed co-signing on 7 of the 11 loans.

30. On or around February 4, 2012, Xerox responded to Defendant TU indicating that it had completed its investigation of Plaintiff's dispute. Xerox advised Defendant TU that Plaintiff owed $106,360 on account number 470-064XXXX.

31. Xerox's ACDV response to Defendnat TU failed to include confirmation that Plaintiff had signed any of the 7 loans that were in dispute.

32. Under 1681i(a)(1)(A), a credit reporting agency must "conduct a reasonable reinvestigation to determine whether the dispute information is inaccurate."

33. Defendant TU had in its possession the individually disputed loans provided by Plaintiff. Defendant TU failed to provide Xerox with copies of these individually disputed loans and failed to clearly convey Plaintiff's dispute to Xerox, and despite receiving no direct confirmation from Xerox in its responsive ACDV that Plaintiff had signed the individually disputed loans, Defendant TU ended its investigation

6

and accepted the false loan information as accurate, in violation of 15 U.S.C. § 1681i(a)(1)(A).

34. Defendant Experian received Plaintiff's dispute on January 23, 2012 and forwarded an ACDV to Xerox on January 27, 2012. Defendant Experian's notice and communication via the ACDV to Xerox failed to include the relevant copies of Plaintiff's individually disputed loans that were provided by Plaintiff to Defendant Experian in his dispute letter.

35. Defendant Experian's failure to include the relevant copies of Plaintiff's individually disputed loans in its notice and communication to Xerox was in violation of 15 U.S.C. §§ 1681i(a)(2)(A) and 1681i(a)(2)(B) .

36. Defendant Experian's ADCV failed to accurately and clearly convey Plaintiff's dispute to Xerox, specifically that he disputed co-signing on 7 of the 11 loans.

37. On or around February 11, 2012, Xerox responded to Defendant Experian indicating that it had completed its investigation of Plaintiff's dispute. Xerox advised Defendant Experian that Plaintiff owed $106,360 on account number 470-064XXXX.

38. Xerox's ACDV response to Defendant Experian failed to include confirmation that Plaintiff had signed any of the 7 loans that were in dispute.

39. Defendant Experian had in its possession the individually disputed loans provided by Plaintiff. Defendant Experian failed to provide Xerox with copies of these individually disputed loans and failed to clearly convey Plaintiff's dispute to Xerox, and despite receiving no direct confirmation from Xerox in its responsive ACDV

7

that Plaintiff had signed the individually disputed loans, Defendant Experian ended its investigation and accepted the false loan information as accurate, in violation of 15 U.S.C. § 1681i(a)(1)(A).

40. Defendant Equifax received Plaintiff's dispute on January 18, 2012 and forwarded an ACDV to Xerox on January 23, 2012. Defendant Equifax's notice and communication via the ACDV to Xerox failed to include the relevant copies of Plaintiff's individually disputed loans that were provided by Plaintiff to Equifax in his dispute letter.

41. Defendant Equifax's failure to include the relevant copies of Plaintiff's individually disputed loans in its notice and communication to Xerox was in violation of 15 U.S.C. §§ 1681i(a)(2)(A) and 1681i(a)(2)(B).

42. The ADCV sent by Defendant Equifax to Xerox classified Plaintiff's dispute as "109 – DISPUTES CURRENT BALANCE" and "001 – NOT HIS/HERS. PROVIDE COMPLETE ID."

43. Defendant Equifax's ADCV failed to accurately and clearly convey Plaintiff's dispute to Xerox, specifically that he disputed co-signing on 7 of the 11 loans.

44. On or around February 14, 2012, Xerox responded to Defendant Equifax indicating that it had completed its investigation of Plaintiff's dispute. Xerox advised Equifax that Plaintiff owed $106,360 on account number 470-064XXXX.

45. Xerox's ACDV response to Defendant Equifax failed to include confirmation that Plaintiff had signed any of the 7 loans that were in dispute.

46. Defendant Equifax had in its possession the individually disputed loans provided by Plaintiff. Defendant Equifax failed to provide Xerox with copies of these individually disputed loans and failed to clearly convey Plaintiff's dispute to Xerox, and despite receiving no direct confirmation from Xerox in its responsive ACDV that Plaintiff had signed the individually disputed loans, Defendant Equifax ended its investigation and accepted the false loan information as accurate, in violation of 15 U.S.C. § 1681i(a)(1)(A).

47. Around this same time, Plaintiff wanted to increase the $750 credit limit on his Capital One Bank credit card and applied to Capital One for an increase.

48. On February 29, 2012, Capital One advised Plaintiff that his request for additional credit was denied.

49. On March 9, 2012, Plaintiff wrote to Capital One asking for an explanation as to why he was denied credit.

50. Capital One never provided Plaintiff with a detailed explanation for denying him credit.

51. On information and belief, Capital One denied Plaintiff's application in part because of the high debt to income ratio caused by Defendants' inaccurate reporting.

52. On or around May 1, 2012, Plaintiff applied for a home loan from Mortgages Unlimited. In connection with his application, Plaintiff explained his ongoing dispute with Xerox.

53. On or around May 1, 2012, Mortgage Unlimited denied Plaintiff's application and cited Plaintiff's ongoing dispute concerning the Xerox loans as the reason for the denial.

54. Unable to obtain a home loan, Plaintiff signed a new lease with his landlord in Plymouth, Minnesota. Starting May 19, 2012, Plaintiff's rent increased to $1085 per month.

55. On or around May 1, 2012, Mortgage Unlimited provided Plaintiff with a copy of a consumer report prepared by Kroll Factual Data containing consumer information about him provided by Defendants Equifax, TU, and Experian.

56. The consumer report from Kroll Factual Data showed that Defendants – as a result of the false information provided from Xerox – were still reporting that Plaintiff had an account balance of over $100,000, in violation of 15 U.S.C. § 1681e(b).

57. The consumer report from Kroll Factual Data showed that Plaintiff's FICO score assigned by Defendant Experian was negatively impacted because Plaintiff's "proportion of loan balances to loan amounts is too high."

58. As a result of Defendants' failures to correct their erroneous and derogatory credit reporting, Plaintiff has suffered credit rejection, reduced credit, emotional distress, embarrassment, helplessness, hopelessness, loss of sleep, frustration, anxiety, and fear, constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

59. Plaintiff is entitled to attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## TRIAL BY JURY

60. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. Amend. 7; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATION OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681, *et seq*.

61. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully stated herein.

62. Defendants Experian, Equifax, and TU prepared, compiled, issued, assembled, and communicated inaccurate, erroneous, and blatantly false and damaging information about Plaintiff to current and potential creditors.

63. Defendants Experian, Equifax, and TU failed to provide all relevant information received from Plaintiff regarding his dispute to the furnisher Xerox, in violation of 15 U.S.C § 1681i(a)(2)(A–B).

64. Defendants Experian, Equifax, and TU willfully violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i by failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer credit history, by allowing the inaccurate and derogatory accounts to be misreported, failing to delete the accounts, and by failing to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

65. As a result of Defendants' violations, Plaintiff has suffered out-of-pocket expenses, detriment to his ability to obtain credit, detriment to his credit rating, embarrassment, helplessness, hopelessness, loss of sleep, frustration, anxiety, and

emotional distress in an amount to be determined at trial.

66. Plaintiff is entitled to recover costs and attorney's fees from Defendants in an amount to be determined pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- statutory damages for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*;
- costs and reasonable attorney's fees pre and post judgment pursuant 15 U.S.C. §1681 *et seq.*;
- actual damages and out of pocket losses as a result of the FCRA violation in an amount to be determined at trial;
- for such other and further relief as may be just and proper.

Dated this 13th day of September, 2013.

By: s/Thomas J. Lyons Jr._____
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommycjc@aol.com

**ATTORNEY FOR PLAINTIFF**

## **VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF**

STATE OF MINNESOTA )
) ss
COUNTY OF RAMSEY )

I, Jeffrey A. Beaubien, having first been duly sworn and upon oath, depose and say as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

s/Jeffrey A. Beaubien
Jeffrey A. Beaubien

Subscribed and sworn to before me
this 11th day of September, 2013.

s/Andrea L. Weber
Notary Public

13