UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JEFFREY A. BEAUBIEN,                              Case No. 13-CV-2549 (PJS/JSM)

                    Plaintiff,

v.                                                                    ORDER

EXPERIAN INFORMATION SOLUTIONS,
INC.,

                    Defendant.
_____

Thomas J. Lyons, Jr., CONSUMER JUSTICE CENTER P.A., for plaintiff.

Sergio A. Tostado, JONES DAY; Gregory J. Myers, LOCKRIDGE GRINDAL
NAUEN P.L.L.P., for defendant.

In early 2012, plaintiff Jeffrey Beaubien discovered incorrect information on his credit
report.  He notified defendant Experian Information Solutions, Inc. ("Experian"), a credit-
reporting agency, of the error.  Experian contacted the furnisher of the information, and the
furnisher verified that the information was correct.  Experian then informed Beaubien that it
would continue to report the information.  In fact, the information was not correct, and the
furnisher erred when it verified the information.

Beaubien now brings claims against Experian under the Fair Credit Reporting Act
("FCRA"), 15 U.S.C. § 1681 et seq.  This matter is before the Court on Experian's motion for
summary judgment and Beaubien's motion for partial summary judgment on liability.  For the
reasons stated below, Experian's motion is granted in part and denied in part and Beaubien's
motion is denied.  Specifically, the Court denies both parties' motions insofar as they seek
judgment on Beaubien's claim that Experian's reinvestigation of Beaubien's dispute was
negligent.  The Court grants Experian's motion in all other respects.

I.  BACKGROUND

Beaubien's son, Joseph Cairl, took out a series of eleven student loans from Bremer
Bank.  The total principal amount of these loans was approximately $87,660.  Scott Dep. Ex. 4.
Beaubien co-signed four of the loans, making him jointly liable for approximately $29,000 of the
principal amount.  Scott Dep. Ex. 4.

At some point after Cairl graduated, Bremer Bank sold the loans to ACS.  Cairl Dep. 11.
Cairl later discovered that ACS's records wrongly treated Beaubien as being liable for all eleven
loans, rather than for only the four loans that he had co-signed.  Cairl Dep. 14-15.  At that point,
the total amount of principal and interest on the eleven loans was over $100,000.  Beaubien
Dep. 20, 29-30.  Cairl informed Beaubien, who reviewed his Experian credit report and
discovered that it listed a loan debt of over $100,000.  Beaubien Dep. 160; Scott Dep. Ex. 4.  On
January 12, 2012, Beaubien sent a letter to Experian disputing the amount of the debt being
reported by ACS.  Scott Dep. Ex. 4.  Beaubien explained that the loans had been taken out by his
son, Joseph Cairl, and that Beaubien had co-signed only some of Cairl's loans.  Scott Dep. Ex. 4.
Beaubien also attached copies of the Bremer Bank promissory notes showing that he had co-
signed only four of the eleven loans.  Scott Dep. Ex. 4.

Experian scanned Beaubien's letter (including the attachments) into an electronic
imaging system.  Scott Dep. 37.  An Experian employee then reviewed the letter and prepared an
"automated consumer dispute verification" form (or "ACDV").  An ACDV is an electronic form
that a credit-reporting agency uses to notify a furnisher of information that a consumer has
disputed the accuracy of that information.  Scott Dep. 38; Hughes Aff. ¶ 11, June 30, 2014
[hereinafter "Hughes Aff."].  An ACDV generally contains (1) information identifying the

consumer; (2) a "dispute code" that indicates the nature of the consumer's dispute; and, in some

cases, (3) a free-form narrative with additional information.  Hughes Aff. ¶¶ 47, 49.  The dispute

codes used on ACDVs are widely known and accepted throughout the credit-reporting industry.

Hughes Aff. ¶ 49.

> Under "Dispute Reason," the ACDV for Beaubien's dispute stated:

> > 111 — Claims company will delete.  Verify all account
> > information.  RCVD DOCUMENTS DTD FROM 06/2003 TO
> > 08/2007 FROM BREMER EDU SHOWING JEFFREY
> > BEAUBIEN AS BORROWER ONLY IN SOME OF THEM.

Scott Dep. Ex. 6.  The number "111" is the dispute code corresponding to "Claims company will

delete.  Verify all account information."  Scott Dep. 44-46, 48-49; Hughes Aff. ¶ 51.  The

additional information — that is, the information typed in capital letters — was entered manually

by an Experian employee.  Scott Dep. 49-50.  At the time that Experian created this ACDV,

employees could use no more than 120 characters (including spaces) to provide additional

information to the creditor.  Scott Dep. 50, 57.

On February 10, 2012, Experian received a response from ACS indicating that the

information that ACS had reported to Experian was accurate.  Scott Dep. 57, 61; Hughes Aff.

¶ 22.  Specifically, under the heading "SUBSCRIBER RESPONSE" on the ACDV form, ACS

stated that the balance of the loan was $106,360.  Scott Dep. Ex. 4; Scott Dep. 63-64.  The nature

of ACS's response did not trigger any human review.  Scott Dep. 57-59, 77.  Instead, Experian's

computer system generated an automated letter to Beaubien.  The letter told Beaubien that ACS

continued to report Beaubien as liable for a loan of $106,360 and that the information in his

credit report had been "updated."  Beaubien Dep. Ex. 15.  (Presumably the "updated" status

simply reflected that the balance had decreased slightly since the date of Beaubien's January 12

letter.) Beaubien did not contact Experian again. Experian apparently corrected its records in July 2012 — about six months after Beaubien had brought the error to its attention — after Experian received further communications from ACS. Hughes Aff. ¶ 27-30; Scott Dep. 84-86, 89-91.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

### B.  *FCRA*

Experian is a "consumer reporting agency" ("CRA") within the meaning of the FCRA.  *See* 15 U.S.C. § 1681a(f).  Under the FCRA, a consumer (such as Beaubien) has the right to contact a CRA (such as Experian) to dispute the accuracy of any item of information in his credit report.  After a consumer notifies the CRA of a dispute, the CRA has a duty to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . ."  15 U.S.C. § 1681i(a)(1)(A).  The CRA is also required to notify the furnisher of the disputed information (here, ACS) and must "include all relevant information regarding the dispute that the [CRA] has received from the consumer . . . ."  15 U.S.C. § 1681i(a)(2)(A).

Beaubien alleges that Experian both failed to "include all relevant information regarding the dispute" in its notice to ACS and that Experian failed to conduct a reasonable reinvestigation of the disputed information.  The Court considers each claim in turn.[1]

1.  Failure to Include Relevant Information

Beaubien first alleges that the ACDV that Experian sent to ACS failed to "include all relevant information regarding the dispute" because it did not forward copies of the promissory notes that Beaubien had sent, did not fully and accurately summarize the nature of the dispute in the ACDV, and used a dispute code that did not accurately reflect the nature of the dispute.  The Court disagrees.

To begin, the FCRA does not require CRAs to forward documents sent by the consumer. *See Paul v. Experian Info. Solutions, Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011); *Edeh v. Equifax Info. Servs., LLC*, No. 11-CV-2671 (SRN/JSM), 2012 WL 4358646, at *3 n.1 (D. Minn. Sept. 21, 2012), *aff'd*, 564 Fed. Appx. 878 (8th Cir. 2014) (per curiam).  Instead, the FCRA requires the CRA to include "all relevant *information*" that it received from the consumer.  *See* 15 U.S.C. § 1681i(a)(2)(A) (emphasis added).  That is what Experian did here.  As discussed earlier, the ACDV stated as follows:

> 111 — Claims company will delete.  Verify all account information.  RCVD DOCUMENTS DTD FROM 06/2003 TO 08/2007 FROM BREMER EDU SHOWING JEFFREY BEAUBIEN AS BORROWER ONLY IN SOME OF THEM.

---

[1]Beaubien's complaint also includes a claim that Experian violated 15 U.S.C. § 1681e(b) by failing to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  At oral argument, however, Beaubien confirmed that he has abandoned that claim.

This statement fully and accurately conveys the dispute between Beaubien and ACS.  It indicates that Beaubien sent documents dated from June 2003 to August 2007; it identifies the documents as being "from Bremer Edu"; and it states that the documents show that Beaubien is the borrower "only in some of them."

Beaubien faults the ACDV for failing to specifically identify the documents as promissory notes.  Given that the dispute was over a group of loans, however, any documents that could "show[]" Beaubien as the "borrower only in some of them" were most likely promissory notes.  It was thus clearly implied by Experian that it had received promissory notes.

Beaubien also faults Experian for failing to note the extent of the discrepancy between the loan amounts on the promissory notes that Beaubien co-signed and the amount being reported by ACS.  Experian clearly communicated that there *was* a discrepancy, however, and Beaubien cites no authority for the proposition that a CRA must provide a specific figure. Although quantifying the amount of the discrepancy may have underscored the importance of this dispute to Beaubien, such information was not necessary for ACS to understand the nature of the dispute.  *Cf. Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006) ("No summary judgment evidence indicates that RNB-Target needed any other information to complete a reinvestigation.  To the contrary, the evidence shows that the information provided was sufficient."), *aff'd*, 224 Fed. Appx. 415 (5th Cir. 2007) (per curiam).

Beaubien also contends that Experian should have identified Beaubien's son, Joseph Cairl, as the co-borrower.  But Beaubien does not explain — and it does not occur to the Court — why this information would be relevant or necessary for ACS to conduct its own investigation.

Finally, Beaubien argues that Experian chose an incorrect and confusing dispute code that failed to convey the nature of the dispute. It is true that the first phrase of the dispute code — "Claims company will delete" — does not match the dispute. But the code also requested that ACS "[v]erify all account information," and the ACDV went on to accurately convey both the nature of the dispute and the type of evidence that Beaubien had submitted. The Court therefore holds that Experian complied with § 1681i(a)(2)(A) and grants Experian's motion for summary judgment on Beaubien's claim under that provision.

### 2. Reasonable Reinvestigation

Beabien next alleges that Experian failed to conduct a reasonable reinvestigation in violation of § 1681i(a)(1)(A). The Court finds that disputes of material fact preclude summary judgment for either party on this claim.

Experian contends that its reinvestigation was reasonable as a matter of law because it complied with its § 1681i(a)(2)(A) duty to provide all relevant information to ACS. As long as a CRA complies with that duty, Experian argues, the CRA is entitled to rely on the creditor's verification. A number of circuit courts have held, however, that it is not necessarily reasonable for a CRA to rely solely on the furnisher's verification. In particular, if a CRA possesses information that casts doubt on the furnisher's reliability or the accuracy of its verification, the CRA may have a duty to take additional steps to verify the information disputed by the consumer. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources." (quoting 15 U.S.C. § 1681(a)(4))); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994) ("Whether the credit reporting agency has a duty

to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable."); *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993) ("In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.").

In this case, Experian had information in its own possession that strongly suggested that ACS's reporting was incorrect.  Specifically, the original servicer of the loans — listed on an Experian report as "Student Loan Finance C" — had earlier reported that Beaubien was liable for four student loans totaling roughly $30,000.  Scott Dep. 12-13; *Id.* Ex. 2 at EXPERIAN-000206.  The servicer had also reported that the loans were transferred to another lender.  Scott Dep. 13; *Id.* Ex. 2 at EXPERIAN-000206.  The amounts and dates of each of the four loans in the earlier report roughly correspond to the amounts and dates of the four promissory notes that Beaubien had co-signed and submitted with his dispute letter.  In addition, Beaubien's promissory notes identify the servicer as "SLFC," which strongly suggests that it is "Student Loan Finance C" (i.e., the same servicer that originally reported the loans).

Taken together, all of this information — along with Beaubien's promissory notes — strongly corroborated Beaubien's account of the dispute.  Under these circumstances, a jury could find that it was unreasonable for Experian to accept ACS's terse, one-word verification that Beaubien was liable for the full amount — a verification that did not even attempt to explain the discrepancies between ACS's reporting and the information that Experian had in its own possession.

Experian argues that Beaubien cannot prove that further action on Experian's part would have uncovered the error.  That is for the jury to decide.  The jury may find that, had Experian followed up, it would have discovered that ACS could not explain the discrepancies, in which case Experian should have concluded that the six-figure loan could not be verified and had to be deleted from Beaubien's credit report.  *See* 15 U.S.C. § 1681i(a)(5).

That a jury *could* find Experian's reinvestigation unreasonable, however, does not mean that a jury *must* do so.  As courts have recognized, a creditor is generally "in a far better position to make a thorough investigation of a disputed debt" than is the CRA.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009).  It is therefore not necessarily unreasonable for a CRA to rely on the creditor's investigation, particularly where, as here, the CRA provided the creditor with all relevant information about the dispute that it had received from the consumer.  Moreover, although Experian possessed additional information that corroborated Beaubien's account, none of the information in its possession was necessarily inconsistent with ACS's report.  As Experian points out, there could have been additional loans, or Beaubien could later have co-signed for the full amount, or (despite the similarities between the loans) there may have been no relationship between the earlier-reported $30,000 in loans and the later-reported $100,000 loan.  In light of these circumstances, a jury could conclude that Experian acted reasonably in accepting ACS's verification.  The Court therefore denies both parties' motions for summary judgment on this claim.

For essentially the same reason, the Court holds that, although Experian's conduct may have been negligent, no reasonable jury could find that Experian willfully violated the FCRA.  *See* 15 U.S.C. § 1681n(a) (permitting statutory and punitive damages for willful violations of the

FCRA).  A violation is willful if the defendant acted in reckless disregard of its statutory duties.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007).  Recklessness entails "'an

unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id.*

at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

 For a plaintiff to prevail on a § 1681i reinvestigation claim, the plaintiff must show,

among other things, that the information reported by the CRA was inaccurate.  *See DeAndrade v.*

*Trans Union, LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (citing cases).  Thus, Experian acted

recklessly only if it did something to create an unjustifiably high risk that its reinvestigation

would fail to uncover inaccuracies in Beaubien's report.  Given that Experian provided all

relevant information to ACS — and given that ACS's verification was not necessarily

inconsistent with the information in Experian's possession — no reasonable jury could conclude

that Experian willfully violated its duty to conduct a reasonable reinvestigation when it relied on

ACS's verification.  The Court therefore grants Experian's motion for summary judgment on

Beaubien's § 1681n willfulness claim.

ORDER

 Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 35] is GRANTED IN

  PART and DENIED IN PART.

  a. The motion is DENIED as to plaintiff's claim that defendant negligently

   violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable

   reinvestigation.

-10-

        b.       The motion is GRANTED in all other respects, and all of plaintiff's other claims are DISMISSED WITH PREJUDICE.

    2.      Plaintiff's motion for partial summary judgment [ECF No. 41] is DENIED.

Dated:  November 7, 2014                   s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge